WILLIAM FISHER, defendant below, plaintiff in error, *vs.* THE
STATE OF DELAWARE, plaintiff below, defendant in error. *

*Breaking Into Dwelling House in Night Time—Intent to Commit
Rape—Evidence—Harmless Error.*

In a trial for feloniously breaking and entering into a dwelling house in
the night time with intent to commit rape, the prosecuting witness having
testified that about midnight the defendant confronted her in her house,
when she was alone, with his clothes undone, holding on to his person,
shaking himself shamefully before her ; the officer who made the arrest a
very few moments after the offence, having testified that the defendant's
flies were unbuttoned, and the defendant having admitted on the stand that
he did break into the house, but for the purpose of stealing : *Held* that the
testimony of a witness who swore that almost immediately after the alleged
offence, and about a square distant from the place, he was informed that a
negro had broken into a house and tried to commit a rape on a white
woman.worked no injury to the defendant.

*(September 8, 1898.)*

NICHOLSON, Ch., and PENNEWILL and BOYCE, J. J., sitting.

*John P. Nields* for plaintiff in error.

*Robert C. White* Attorney General, for defendant in error. ·

Supreme Court, adjourned June Term (September 8), 1898.

Writ of error to the Court of Oyer and Terminer of the State
of Delaware in and for New Castle County. See facts in opinion
of Court.

PENNEWILL, J., delivering the opinion of the Court :

This is the first case of a criminal character in the history of
this State which has been heard upon a writ of error in the
appellate court, there having been no right of review given in
such cases until the promulgation of the present Constitution.

The provision of the Constitution which confers upon the
defendant in criminal cases the right to a writ of error is found
in Section 12 of Article 4, and is as follows, viz :   The Supreme

*See State vs. Fisher, p. 303.*

Court shall have jurisdiction as follows : * * * *
"To issue upon application of the accused, after conviction and
sentence, writs of error to the Court of Oyer and Terminer and
the Court of General Sessions in all cases in which the sentence
shall be death, imprisonment exceeding one month, or fine
exceeding one hundred dollars, and in such other cases as shall
be provided by law ; and to determine finally all matters in error
in the judgments and proceedings of said Court of Oyer and
Terminer and Court of General Sessions in such cases."

This case therefore in addition to its very serious nature and
its vital interest to the plaintiff in error, has a further and
peculiar importance by reason of the fact that it is the first of
the kind in the history of the State that has come before this
Court for review and adjudication. In nothing perhaps have the
Courts of Delaware been more commended in the past than the
expeditious hearing and disposition of criminal cases. It has
been a subject of frequent mention and favorable comment, that
while in so many jurisdictions criminals have often escaped
punishment because of the ease and facility with which the exe-
cution of the judgments of the courts were delayed, yet in this
State execution has followed so close upon the sentence as not
only to speedily punish the guilty, but also to create in the
criminal classes a wholesome fear of the penalties of the law.
But notwithstanding such position which our courts have hitherto
held in the matter of criminal procedure, when no right of
review was given, yet it has ever seemed to many of our people
to be consistent with reason and justice, as it certainly was with
the constitutions or statutes of other states, that the defendant,
in at least all important criminal trials, should enjoy the same
rights and privileges that have been so long accorded to defend-
ants in civil causes. Such was the view that was taken by the
framers of our present Constitution and accordingly in their wis-
dom they provided that the Supreme Court should have power
to issue writs of error to the Court of Oyer and Terminer and
the Court of General Sessions. But while this power now exists,
and while the defendant is entitled to have the proceedings in
the Court below carefully reviewed and considered, and while it

is important that his rights should be carefully guarded and his interests fully protected, yet the appellate court must also have regard to the due administration of justice and the proper execution of the law. It is not every error that will justify reversal, and it is not every mistake that may be made in the hurry of a trial court, that will warrant the setting aside of the judgment of that tribunal. But such seems not always to have been the law, for Repallo, J., in an opinion delivered in the celebrated case of *Stokes vs. State*, *53 N. Y. 183*, says, "the refusal to reverse, even when the appellate court was satisfied that by no possibility could the error have produced injury, was an innovation upon ancient rules, under which it was a matter of course to reverse when error appeared, without inquiring into its materiality." But whatever may have been the practice of appellate courts under ancient rules, there can be no doubt as to the law that governs them in this particular to-day.

"In this country it is a general rule in criminal cases that a new trial will not be granted for the erroneous admission or rejection of evidence, where it clearly appears that the defendant could not have been prejudiced thereby." "If on the whole record it appears that justice has been done, and there appears no substantial misdirection of the Court by which the prisoner's rights were injuriously affected, the Court is not justified in reversing the judgment." "When it appears from the record that the error alleged therein on behalf of the appellant could have worked no injury to him, and could not have changed the the result, the judgment of the court below will be affirmed."

"The admission of irrelevant testimony is no sufficient reason for reversing a judgment, when it is apparent that it cannot affect the verdict or the finding injuriously to the plaintiff in error." "Courts now undertake to judge for themselves of the materiality of evidence found to have been improperly admitted or rejected, and when satisfied that no injustice has been done, and that the verdict would have been the same, with or without such evidence, they have refused a new trial." In such language have some of the ablest courts in this country expressed their opinions upon this question, and that it embodies the law on the

subject at the present time is abundantly shown by the whole trend of modern decisions.

*Mining Co. vs. Taylor, 100 U. S. 42. Leach vs. People, 53 Ill., 318. McGean vs. Manhattan R. Co., 117 N. Y. 224. Forrest vs. Forrest, 25 N. Y. 510. State vs. McCaffrey, 63 Iowa 484. Wing vs. Chesterfield, 116 Mass. 356. Hamm vs. Wisconsin & R. Co., 61 Iowa 716. Girard Ins. Co. vs. Marr 46 Pa. 507. Gregg vs. Moss, 14 Wall 569. Gilbert vs. Moline Plough Co., 119 U. S. 494. Wallace vs. People, 159 Ill. 446. Stephens Digest of Ev. (2nd Ed.) 350 (note). 2 Ency. of Plead. & Prac., 500, 507,* (and many cases there cited).

The only authority cited by the plaintiff in error which at first glance might seem to announce a different doctrine, is the case of *Waldron vs. Waldron, 156 U. S. 361*, in which Mr. Justice White used the following language : "It is elementary that the admission of illegal evidence over objection, necessitates reversal." But this case when the entire opinion is carefully examined, is found to be fully in accord with the authorities above mentioned. The learned Justice, by " illegal evidence," undoubtedly meant such evidence as was prejudicial to the defendant, because at the close of his opinion he says, "we have not rested our decree upon the question of the admissibility of this evidence, because the mere illegal introduction of irrelevant evidence does not necessarily constitute reversible error." It has been frequently held that some regard should be had by appellate courts to public policy, and that such courts should not encourage litigation by reversing judgments for technical, formal or other errors which the record affirmatively shows could not have prejudiced the appellant's rights. Every interest of the public demands that the judgment of the lower court should stand in the court above, if on the whole record it appears that justice has been done, and that the defendant has sustained no injury. When the accused has had a fair and legal trial in the court below, the appellate tribunal should not for technical error or harmless mistake nullify the result of such trial. This we believe to be sound doctrine, and it is certainly consistent with good sense and reason. The public should not be subjected to the expense of a

second trial unless there has been some illegality in the proceedings of the first which was injurious to the prisoner.

We have taken some pains to state as clearly as we could in this first criminal case the rule laid down by the courts upon this question. We believe it to be the law, and that public policy as well as the public interest and the public security, demand its application and enforcement by appellate courts. We did not understand that the learned counsel for the plaintiff in error, in his exceptionally able and exhaustive argument before this Court, really questioned the soundness of the law as above stated, but that he denied the application of that law to the present case. We are therefore required to examine with some care the facts and proceedings disclosed by the record in this case, in order to be able the more intelligently to judge whether or not the case is governed by the rules of law above mentioned. The record discloses that William Fisher, the plaintiff in error, was tried in the Court of Oyer and Terminer in New Castle County at the May Term 1898, upon an indictment charging him with the capital offense of feloniously breaking and entering into the dwelling house of one William Hunt in the night time, with intent to commit the crime of rape upon Maria Hunt, against the act of the General Assembly of this State. At such trial the jury rendered a verdict against the defendant of guilty in manner and form as indicted.

There were two assignments of error filed in the case, but the counsel for the plaintiff in error, in his argument before this Court, stated that he relied solely upon the first assignment, which is as follows :

Because the Court erred in admitting the following testimony as evidence in said cause :

Go ahead and state what was done.

*Mr. Nields :*—Don't say what anyone said to you.

A. I was informed that a colored man had broken—(Answer objected to by Mr. Nields and witness cautioned by the Court not to say what any person said but only to state that in consequence of information he had he did certain things).

Q. What was the information you did receive? (Objected to by Mr. Nields because the information he received would be the substance of what was said to him by another person and it was therefore inadmissible).

GRUBB, J:—He can say in consequence of information received by him what he did.

Q. What information did you receive?

A. I was informed that a negro had broken into a house and tried to commit rape on a white woman.

(Objected to by Mr. Nields as absolutely inadmissible, and he requested the Court to have the answer of the witness stricken from the record).

GRUBB J:—It is not saying that this man did it, but that he heard that a rape had been attempted and that he proceeded to do something. As it stands now we do not rule it out; it is in."

The case upon this assignment, presents to this Court two questions, (1) Was the testimony objected to at the trial properly and legally admitted in evidence ; and (2) if improperly and wrongfully admitted, was it such error as would justify this Court in reversing the judgment of the court below.

We have preferred to direct our attention to the latter inquiry, because if we are satisfied from the entire record that this testimony could not have prejudiced the accused, or worked any injury to his interests, it would be perfectly immaterial whether it was legally admitted or not.

While it would be manifestly improper for this Court to express any opinion upon the question whether the verdict of the jury was a just one in view of the evidence, yet it is entirely proper for us to consider the other evidence in the case for the purpose of arriving at a conclusion as to the effect that the testimony to which exception was taken may have had upon the minds of the jury in arriving at their verdict.

It appears from the testimony of Maria Hunt, the prosecuting witness, that about midnight on April 9th, 1898, she was alone in the basement of her house in the City of Wilmington, her husband being absent from home, and her three children

asleep in an upper story. She heard a noise caused by the moving of the latch of the sitting room door, and called twice "Billy," meaning her husband. Hearing no response she immediately ran up stairs to the sitting room, and as she was about to enter the room saw the prisoner standing before her, with his clothes all undone, and holding on to his person, shaking himself shamefully before her. As soon as she saw him she ran screaming from the house through the basement. When captured by the officers the prisoner's flies were unbuttoned. The prisoner himself was called as a witness in his own behalf, and admitted that he was the man who was in the Hunt residence on the night in question, and that he ran out as soon as Mrs. Hunt appeared. He declared, however, that he was in the house for the purpose of stealing, and not for the purpose of committing the crime charged in the indictment. Such was the direct and positive testimony in the case, but it was very earnestly argued in this Court by the counsel for the plaintiff in error that this testimony was so weak and inconclusive as to the material question of "intent," that the Court could not conclude that the jury would have arrived at a verdict of guilty from that testimony alone. It was contended with much force, that without the testimony of Thomas McGoldrick, which was the testimony objected to, and which is covered by the assignment of error, the jury could not, or would not, have reached a verdict of guilty against the accused. Thomas McGoldrick, it seems, about the time of the alleged crime, was sitting in his own house, at least a square away from the Hunt residence, and hearing a woman's scream, he walked to his front door, and was there informed by some one that a negro had broken into a house and tried to commit rape on a white woman. This testimony was admitted over the objection of the prisoner's counsel, and it was admitted, as Judge Grubb said, "to show, in consequence of information received by the witness, what he did."

It will be observed in the first place that in the testimony of Thomas McGoldrick, the prisoner was not named or in any way referred to. It would seem to have been a remark, repeated on the witness stand by McGoldrick, which was made by some one

in the street, unknown to the witness, and at a point some distance from the place where Mrs. Hunt lived.

It is impossible for the Court to see how such a remark could have had any weight or influence with the jury in making up their verdict. It could not have had any tendency to prove the identity of the prisoner with the person who committed the crime, because no allusion was made, directly or indirectly to him, by name or otherwise. And even if it could be considered, in connection with other testimony, as showing such identity, it could have had no effect injurious to the prisoner in this regard, because the prisoner himself when on the stand, admitted that he was the man whom Mrs. Hunt saw in her house on the night in question. In the second place, when the testimony of McGoldrick is considered in connection with the admission of the prisoner and the testimony of Mrs. Hunt, the Court is entirely unable to perceive how it could have had the slightest effect on the jury. The prisoner himself admitted that he was the person who broke into the house, so that much of McGoldrick's testimony manifestly could not have had any weight, and from the testimony of Mrs. Hunt it clearly and conclusively appeared that no attempt whatever was made to commit the crime of rape, a crime moreover for which the prisoner was not indicted. Mrs. Hunt swore that as soon as she saw the prisoner she ran, and that he had no time or opportunity either to touch or to speak to her. Surely the indefinite and intangible testimony which McGoldrick was permitted to give as to an attempt to commit rape, could have had no possible influence with the jury when it was absolutely negatived by the testimony of the prosecuting witness herself. And in the third place, it must be perfectly obvious to any one who examines all the testimony, that the jury could not have rendered the verdict they did without the evidence given by Mrs. Hunt, which so far as it went was clear and positive. And when it is considered that Mrs. Hunt was the person upon whom the prisoner was charged with intent to commit rape, and that she was the only person present except the prisoner, it is clear that the testimony objected to could not have added anything to her testimony on the question

of " intent," or in any way have strengthened the case of the State.

We are forced therefore to conclude that, whether the verdict was a proper one or not, nevertheless the jury based their finding upon the testimony of Mrs. Hunt, which was corroborated to some extent by that of Detective Witsil, and supported in part by the admission of the prisoner ; and that they were influenced not at all by the testimony which was excepted to, which was admitted only for the purpose stated by the court below, and which was in fact entirely immaterial to the case.

We do not say that the evidence in the case, to which no objection was made, was sufficiently strong and conclusive in our judgment to warrant a verdict of guilty in a case where the penalty is death ; and it would be highly improper for this Court to express any opinion thereon.　But we do say that from an examination of the whole record we are satisfied that the result would have been the same in the court below if the testimony to which objection was made had been entirely eliminated from the case.　And being clearly of the opinion that the admission of such testimony worked no injury to the plaintiff in error and that he was not prejudiced thereby, we must refuse to reverse the judgment of the court below.

　　　　　　　The judgment of the court below is affirmed.