Larry JOHNSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 429,2004.

Supreme Court of Delaware.

Submitted: May 24, 2005.
Decided: July 1, 2005.

Anthony Figliola, Jr., Esq. (argued) of Figliola & Facciolo, Wilmington, Delaware, and Edward C. Pankowski, Jr., Esq., Wilmington, Delaware, for appellant.

John Williams, Esq. (argued) Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

RIDGELY, Justice.

The defendant-appellant, Larry Johnson ("Johnson"), appeals his convictions by a jury and sentence imposed by the Superior Court for two counts of felony murder in

the first degree,[1] one count of burglary in the first degree,[2] one count of conspiracy in the second degree [3] and three counts of possession of a firearm during the commission of a felony ("PFDCF").[4] Johnson was acquitted by the jury on two other intentional murder in the first degree charges [5] and the related PFDCF charges.[6] Because the State sought the imposition of a death sentence, a penalty hearing was conducted before the same jury pursuant to statute.[7]

At his penalty hearing, the jury found that the mitigating factors outweighed the aggravating factors. The trial court then weighed all the aggravating and mitigating factors presented at the penalty hearing and decided to sentence Johnson to two consecutive life terms at Level V on the two murder convictions, three years at Level V on each PFDCF conviction, two years and six months at Level V suspended after two years at Level IV on the burglary conviction and one year at Level V on the conspiracy conviction.

Johnson has raised four arguments in this appeal. He contends that the trial court committed reversible error by admitting into evidence: (1) alleged threats made by his co-defendant in violation of his confrontation rights; (2) a prior out-of-court statement of a State's witness under 11 *Del. C.* § 3507 ("Section 3507") [8] in violation of his confrontation rights; (3) a window screen allegedly removed during a burglary that was found some eighteen months after the burglary; and (4) an appraisal form and receipt of a ring alleg-

edly taken from one of the burglarized homes. We find no basis to reverse the convictions and sentence in this case. Accordingly, we affirm.

## I. Factual Background

At trial the State presented evidence that Johnson and co-defendant Donald Cole ("Cole") committed burglaries and shootings at two homes located in Wilmington, Delaware. The first incident occurred on August 22, 2001. On that date, a home located on 1348 Lancaster Avenue was burglarized and the suspects shot and wounded two residents located in the dwelling.

Nine days later, a home located on 105 East 23rd Street was burglarized and again two residents were shot. This time, however, the residents were killed. A ballistics test revealed that the .22 caliber and 9mm bullet casings found at both homes came from the same guns used during both incidents. Travanion Norton ("Norton") allegedly accompanied the defendants on the second burglary and witnessed the murders. Norton testified that he observed Cole shoot one of the victims and watched both Cole and Johnson shoot the other victim. According to Norton, Johnson was the last person shooting at the two victims, explaining that Johnson walked over to one of the victims and fired a shot into their body.

## II. Discussion

We will now address the arguments raised by Johnson on appeal in the order he has presented them.[9]

1. DEL. CODE ANN. tit. 11, § 636(a)(2) (2005).

2. *Id.* at § 826.

3. *Id.* § 512(2).

4. *Id.* at § 1447A(a).

5. DEL. CODE ANN. tit. 11, § 636(a)(1) (2005).

6. *Id.* at § 1447A(a).

7. *Id.* at § 4209.

8. *Id.* at § 3507.

9. We need not address in detail the argument raised by Johnson pertaining to the trial court's admission of a window screen alleged-

## A. The Alleged Threats by Co-Defendant Cole were Properly Admitted

■ Johnson first argues that the trial court erred, as a matter of law, by admitting the alleged threats by Cole against Norton. Johnson claims that his confrontation rights were violated because he had no opportunity to cross-examine Cole (his accuser) since Cole elected not to testify at trial. Johnson relies on a guilt by association theory by virtue of this joint trial proceeding. He concludes by arguing that the admission of Cole's alleged threat was not harmless error because there is no way to determine, absent interrogatories addressed to the jury, the impact this evidence had on the jury's deliberations.

■ We generally review a trial court's evidentiary rulings for abuse of discretion.[10] If we conclude that there was an abuse of discretion, we must then determine whether there was significant prejudice to deny the accused of his or her right to a fair trial.[11] However, alleged constitutional violations pertaining to a trial court's evidentiary rulings are reviewed *de novo*.[12] On the first day of the joint trial, the State informed the trial court that during the testimony of Norton it intended to introduce evidence of an alleged threat made by Cole against Norton. Johnson's counsel objected, arguing that Norton should not be allowed to testify about this alleged threat because Johnson would not be permitted to cross-examine Cole. The trial court was not persuaded by Johnson's objection, noting that the State was not introducing Cole's threat against Johnson, but only introducing it against Cole.

The following day the trial court again discussed the anticipated testimony of Norton. The trial court then asked counsel to consider the impact of the United States Supreme Court's decision in *Crawford v. Washington*[13] on Norton's upcoming testimony. Relying on *Crawford*, counsel for Johnson objected to any evidence being offered concerning the alleged threat made by Cole against Norton. He argued:

We think what Crawford says that as to Travanion Norton anything that Travanion Norton saw, anything that Travanion Norton said, he is subject to cross-examination. That is clear. However, anything that Mr. Cole may have said to Travanion Norton or what someone else may have said to Travanion Norton is not subject to cross-examination, and therefore, it is violative of the confrontation clause.

And I believe that's what Crawford [versus] Washington is saying, the reliability test that we used to use is now out the door and the test is confrontation. Does the defendant have the right to cross-examine the person that is allegedly making that statement, and the answer

ly removed during the burglary at 105 East 23rd Street. Counsel for Johnson conceded at oral argument that even assuming, *arguendo*, that the window screen was improperly admitted, such an error was harmless. Apart from this concession, we find no abuse of discretion in the admission of the exhibit.

10. *Fuller v. State*, 860 A.2d 324, 329 (Del. 2004) (citing *Howard v. State*, 549 A.2d 692, 693 (Del.1988)).

11. *Seward v. State*, 723 A.2d 365, 372 (Del. 1999) (citing *Barriocanal v. Gibbs*, 697 A.2d 1169, 1171 (Del.1997); *Nelson v. State*, 628 A.2d 69, 77 (Del.1993); *Van Arsdall v. State*, 524 A.2d 3, 10 (Del.1987); *Reynolds v. State*, 424 A.2d 6, 7 (Del.1980); *Fisher v. State*, 41 A. 184, 186 (Del.1898)).

12. *Hall v. State*, 788 A.2d 118, 123 (Del.2001) (citing *Warren v. State*, 774 A.2d 246, 251 (Del.2001)).

13. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

to that question is no. And I think Crawford said the answer to this is no, it doesn't come in. I may be reading it in a simplified manner but I believe that's what it says.[14]

The trial court overruled this objection. It reasoned that none of the statements the State intended to elicit from Norton were intended to implicate Johnson. The trial court was further satisfied by the State's explanation that Cole did not mention Johnson when he made the alleged threat against Norton to keep his "mouth shut" and remember his "newborn son." [15] After the trial court's evidentiary ruling, Norton appeared as a witness for the State and testified that Cole told him to keep his "mouth shut" about the murders and to remember that his son "was just born." [16]

Johnson contends that the admission of Cole's alleged threat against Norton adversely implicated him by virtue of this joint trial proceeding. We have reviewed the record and find no basis to agree with this contention. Prior to Norton testifying at this joint trial, the State explained that Norton would only testify that Cole (not Johnson) told him to keep his "mouth shut" about the murders and to remember his "newborn son." [17] In addition, Norton's trial testimony did not implicate Johnson in any way. A brief excerpt from Norton's testimony illustrates this point:

Q. Speaking of safety, did there come a time after the murders where your spoke with Donald Cole?

A. Yeah. I mean we didn't exactly speak, but he had something to say.

Q. And where were you when this statement was made?

A. Alongside of my house.

Q. On 27th Street?

A. Yeah.

Q. Approximately how long after you had seen Donald Cole shoot multiple rounds into a naked man in his own house did the conversation occur?

A. Probably like two days afterwards.

Q. What did Mr. Cole say to you?

A. He had told me, you know your son was just born, keep your mouth shut.[18]

This testimony was admissible as evidence of guilt against Cole only, and there is no indication that the State made any other use of this evidence. Moreover, the trial court cured any potential prejudice to Johnson by instructing the jury that two separate cases were being tried together, that the defendants were charged as individuals, and that they "must weigh the evidence and apply the law individually and render separate verdicts as to each defendant." [19] We must presume that the jury followed the trial court's instruction.[20] Accordingly, we hold that the trial court properly exercised its discretion and did not commit legal error in admitting into evidence the alleged threats by Cole against Norton.

**B. *The Section 3507 Statement was Properly Admitted***

Johnson next argues that the admission of an out-of-court statement under Section 3507 was improper. He maintains that, in light of *Crawford,* he was denied

---

14. Transcript of Trial Proceedings on July 21, 2004 at 110–11.

15. *Id.* at 114.

16. *Id.* at 171.

17. *Id.* at 114.

18. Transcript of Trial Proceedings on July 21, 2004 at 171.

19. Transcript of Jury Instructions on July 29, 2004 at 6.

20. *Claudio v. State,* 585 A.2d 1278, 1280 (Del. 1991); *Kornbluth v. State,* 580 A.2d 556, 560 (Del.1990).

his right to confront his accuser because his accuser had no recollection of making the prior out-of-court statement.

■ Our review of a ruling on the admissibility of a Section 3507 statement is for abuse of discretion.[21] An alleged constitutional violation pertaining to a trial court's evidentiary ruling is reviewed *de novo*.[22]

In prosecuting both Johnson and Cole, the State introduced evidence of the burglaries at 1348 Lancaster Avenue and 105 East 23rd Street. The State also introduced Cole's guilty plea to the burglary at 1348 Lancaster Avenue and ballistics evidence that the two guns were the same used in each incident. Johnson testified in his own defense and denied any involvement in both incidents. Johnson's counsel also presented the testimony of a victim from the 1348 Lancaster Avenue incident who positively identified Elwood Hunter as a perpetrator and who was unable to identify Johnson as one of the perpetrators.

The State then presented Bessie Warner ("Warner") as a reluctant rebuttal witness to Johnson's defense. Warner was Cole's girlfriend and the two had a child together. On direct examination, Warner testified that she overheard a conversation between Johnson and Cole in the summer of 2001 regarding a burglary and a shooting. However, she claimed that she could not recall the details of this conversation. Warner also claimed that she could not recall speaking with Detective Scott Chaffin ("Detective Chaffin") of the Wilmington Police Department about the conversation she overheard.

After Warner explained her lack of recollection, the State presented her prior out-of-court statement through Detective Chaffin. Detective Chaffin testified that he had two earlier conversations with Warner on October 9 and 10, 2001 and during the second visit he learned that Warner had received an appraisal of a ring allegedly taken from 1348 Lancaster Avenue. Detective Chaffin obtained the appraisal form and receipt. According to Detective Chaffin, Warner told him that Johnson gave the ring to Cole and two days later Cole gave the ring to her to have it appraised. Although this ring was never recovered, Warner told Detective Chaffin that she returned the ring to Cole after she obtained the appraisal.

Detective Chaffin also testified that he, along with another detective from the Wilmington Police Department, met with Warner again on December 19, 2001. During this meeting, Warner described how she recalled overhearing a conversation between Johnson and Cole talking outside her house in which they discussed a burglary and shooting. Warner also told Detective Chaffin that it was during this conversation that Johnson gave the ring to Cole. When Cole came back into the house, Warner told Detective Chaffin that she observed Cole in possession of a ring. It was two days later when Cole asked Warner to have the ring appraised.

When the State indicated that it was going to introduce Warner's prior out-of-court statement to Detective Chaffin pursuant to Section 3507, counsel for Johnson objected. He claimed that his client's confrontation rights were being violated.[23] Specifically, Johnson's counsel argued:

> Your Honor, if this woman cannot recall what happened, I do not have a chance

---

21. *Barnes v. State*, 858 A.2d 942, 944 (Del. 2004) (citing *Floudiotis v. State*, 726 A.2d 1196, 1202 (Del.1999); *Weber v. State*, 547 A.2d 948, 955 (Del.1988)).

22. *Hall*, 788 A.2d at 123 (citing *Warren*, 774 A.2d at 251).

23. On appeal Johnson only raises a constitutional challenge to the trial court's admission of Warner's prior out-of-court statement.

to cross-examine her. If I cannot cross-examine her; my client's confrontation rights àre violated.

[The State] is trying to put in what she allegedly said to the detective. That doesn't meet the criteria of Crawford, Your Honor. I have to be able to cross-examine the witness. If she doesn't remember, I can't cross-examine her.[24]

The State responded that Warner was a "turncoat witness" and Section 3507 was designed to remedy this very situation. The trial court agreed and permitted Detective Chaffin to testify to Warner's prior out-of-court statement. We agree with the trial court's ruling and conclude that Johnson's confrontation rights were not violated.

■■■ The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...."[25] This fundamental right is made obligatory on the States by virtue of the Fourteenth Amendment.[26] "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."[27]

Until the United States Supreme Court decided Crawford, the scope of a defendant's confrontation rights was conditioned on whether the hearsay evidence fell within a firmly rooted hearsay exception or bore a particularized guarantee of trustworthiness.[28] Crawford rejected this general framework with respect to prior testimonial statements, holding that under the Sixth Amendment, out-of-court testimonial statements by witnesses are inadmissible against the defendant if the witness is unavailable and there is no opportunity to cross-examine the witness.[29] Johnson contends that, in light of Crawford, his confrontation rights were violated by admitting Warner's prior out-of-court statement. He maintains that although Warner testified, she was nonetheless not subject to cross-examination because she repeatedly denied having knowledge of the statements she previously made to Detective Chaffin. We find that Johnson's reliance on Crawford is misplaced and his constitutional challenge unpersuasive.

■ Crawford did "not expressly require any specific quality of cross-examination...."[30] The Confrontation Clause only guarantees a defendant the opportunity for effective cross-examination of the declarant, not effective cross-examination in whatever way and in whatever manner a defendant may wish.[31] Thus, when a witness takes the stand at trial, and is subject to cross-examination, the traditional pro-

**24.** Transcript of Trail Proceedings on July 28, 2004 at 70–71.

**25.** *See* U.S. CONST. amend. VI. *See also* DEL. CONST. art. I, § 7 (providing that "[i]in all criminal prosecutions, the accused hath a right ... to meet the witnesses in their examination face to face ....").

**26.** *Pointer v. State,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**27.** *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

**28.** *See Ohio v. Roberts,* 448 U.S. 56, 65–67, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Lilly v. Virginia,* 527 U.S. 116, 124–25, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).

**29.** *Crawford,* 124 S.Ct. at 1369 (citations omitted).

**30.** *Burke v. State,* 484 A.2d 490, 494 (Del. 1984) (citing *Johnson v. State,* 338 A.2d 124, 127 (Del.1975)).

**31.** *See United States v. Owens,* 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (indicating that "successful cross-examination is not the constitutional guarantee.").

tections afforded under the Confrontation Clause are satisfied.[32]

In this case, Warner took the stand and was subject to cross-examination. Defense counsel had the opportunity to cross-examine Warner about her recollection of the overheard conversation between Johnson and Cole and her prior discussions with Detective Chaffin. The mere fact that Warner's recollection was limited does not make her unavailable for cross-examination for Confrontation Clause purposes.[33] We therefore conclude that there was no denial of Johnson's confrontation rights.

## C. *The Appraisal Form and Receipt were Properly Admitted*

Johnson finally argues that the trial court abused its discretion in admitting an appraisal form and receipt for a ring allegedly stolen from 1348 Lancaster Avenue. Johnson's argument is two-fold. First, he argues that the evidence was never properly authenticated because the State failed to identify the ring as the property taken from 1348 Lancaster Avenue. Second, Johnson argues, for the first time on appeal, that the ring appraisal and receipt was improperly admitted because the probative value of this evidence was far outweighed by the danger of unfair prejudice to Johnson.

As stated earlier, we generally review a trial court's evidentiary rulings for abuse of discretion.[34] To the extent that Johnson's challenge of an evidentiary ruling was not fairly raised in the case below, our review of the ruling is for plain error.[35] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[36] Plain error is limited to defects found in the record that are so basic, serious and fundamental in their character that they clearly deprive an accused of a substantial right or show manifest injustice.[37] To put it even more simply, a plain error is an obvious error that affects substantial rights.

We first turn to the authentication issue. Delaware Rule of Evidence ("D.R.E.") 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[38] The State bears this burden in this case.[39] One way the State can satisfy its burden is through circumstantial evidence.[40]

In this case, a combination of the testimony from Detective Chaffin and

---

**32.** *Id.*

**33.** *See id.* at 559–60, 108 S.Ct. 838 (holding that the defendant's confrontation rights were not violated when the prosecution witness had a loss of memory). *See also Hall v. State,* 788 A.2d 118, 124–25 (Del.2001) (holding that the witness' memory lapses did not deprive the defendant of his right of cross-examination).

**34.** *Fuller,* 860 A.2d at 329 (citing *Howard,* 549 A.2d at 693).

**35.** *Capano v. State,* 781 A.2d 556, 586 (Del. 2001).

**36.** *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986) (citing *Dutton v. State,* 452 A.2d 127, 146 (Del.1982)).

**37.** *Id.*

**38.** DEL. R. EVID. 901(a).

**39.** *Fountain v. State,* 2004 WL 1965196, at *1, 2004 Del. LEXIS 360, at *3 (Order).

**40.** *Cf. Cabrera v. State,* 840 A.2d 1256, 1264 (Del.2004) (providing that circumstantial evidence was sufficient to demonstrate a nexus between a piece of evidence and the crime) (citations omitted).

Warner sufficed to authenticate the appraisal form and receipt. It is undisputed that a platinum wedding band was taken from 1348 Lancaster Avenue. There is also evidence that following the burglary at 1348 Lancaster Avenue, Johnson gave the ring to Cole and Cole gave the ring to Warner to have it appraised. The record further shows that Detective Chaffin obtained the ring appraisal, including a photograph of the ring, as well as the receipt for the appraisal, from Warner during the course of his investigation. Based on this evidence, we conclude that the State established a sufficient circumstantial link between the appraisal and the 1348 Lancaster Avenue burglary sufficient to authenticate the evidence and permit its introduction at trial.

We now turn to the unfair prejudice issue. Under D.R.E. 403, a trial court should not admit evidence that has probative value if that evidence would be substantially outweighed by the danger of unfair prejudice.[41] We have held that even in cases where an objection has been fairly raised at trial, the determination of whether evidence is unfairly prejudicial is particularly within the sound discretion of the trial court.[42] On the record before us, we cannot conclude that the trial court committed plain error by refusing to bar the admission of the appraisal form and receipt under D.R.E. 403.

### III. Conclusion

Accordingly, the judgments of conviction entered and sentence imposed against Johnson in the Superior Court are affirmed.

---

**41.** Del. R. Evid. 403.

**42.** *Williams v. State,* 494 A.2d 1237, 1243 (Del.1985).