ON MOTION FOR REHEARING

WARNER, Judge.
We have extensively reviewed the facts on rehearing. We withdraw our previous opinion in this case and substitute the following in its place.
*647 Appellant challenges his convictions for grand theft and scheming to defraud in connection with the fraudulent use of credit cards at a bar where the appellant was a bartender. He claims that the court erred when it allowed a state witness to testify that she thought “something illegal was going on” when customers of appellant’s were running up huge bar tabs. We agree and reverse.
This is the second trial of this case, the first ending in a hung jury. The appellant was a bartender at a popular Fort Lauder-dale bar. During a period from April to July 1988 approximately $26,000 in credit card sales from his customers were charged back to the bar by the credit card company because the credit cards were either stolen or otherwise unusable and the proper authorization from the credit card company for the charges at the time each purchase was made had not been obtained. Much of the testimony at trial centered around the accounting practices of the bar and the credit card company in showing this large amount of unauthorized purchases, all of which were traced to appellant’s bar station.
There was no direct evidence that appellant knew that the cards were stolen, and the state’s case as to appellant’s knowledge and intent rested on circumstantial evidence. Thus, the testimony of witness Brenda Kezar became more important. Ms. Kezar did not testify in the first trial. At the second trial she testified that she was a regular at the bar where appellant worked because she was dating another bartender. She also had a girlfriend who was having a relationship with appellant. She noticed a group of individuals who bought a lot of champagne one evening. Her girlfriend noticed them, too, and became interested in the man who appeared to be spending the money. She said appellant was the bartender for this group. She also testified that she went with this group of big spenders to another bar on one occasion with her girlfriend and that later appellant arrived at the bar. She was then asked whether she ever suspected that something illegal was going on. Over counsel’s objection she was allowed to testify that she did suspect illegality.
To permit the witness to offer opinions about the guilt of appellant was error. See Floyd v. State, 569 So.2d 1225, 1231-2 (Fla.1990), cert. denied, 501 U.S. 1259, 111. S.Ct. 2912, 115 L.Ed.2d 1075 (Fla.1991); Glendening v. State, 536 So.2d 212, 221 (Fla. 1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219,106 L.Ed.2d 569 (1989). Moreover, this was not a case where a lay witness may testify in the form of opinion because the witness cannot otherwise communicate accurately and fully what he or she perceived. See Somerville v. State, 584 So.2d 200 (Fla. 1st DCA 1991); Mills v. State, 367 So.2d 1068 (Fla. 2d DCA), cert. denied, 374 So.2d 101 (Fla.1979).
The state claims that Ms. Kezar’s testimony does not clearly suggest that she suspected that appellant was doing something illegal. We disagree. First, the question of the prosecutor was, “Regarding these two individuals that had given Christopher Murphy all their credit cards, did you ever suspect that maybe something illegal was going on?” Thus, the question itself ties appellant with the individuals. Later the prosecutor elicited that she had specifically discussed appellant with her boyfriend, another bartender, with regard to this issue. Moreover, she tried to convey the impression that appellant had met with these individuals who had used the stolen credit cards on occasions outside of the bar, implying that there was a greater connection between them than merely a bartender/customer relationship. However, on cross examination she admitted that she never saw appellant join this group of credit card users outside the bar. Finally, she revealed to the jury that she became a witness a week before the trial when she was asking the prosecutor, who happened to be a friend of hers, what cases he was working on. He mentioned that he was working on a credit card fraud case, and she mentioned that she used to know someone who did that, specifically naming the defendant. Overall, her testimony leaves no doubt that when she said that “something illegal” was going on, she was including appellant in whatever illegality she was talking about.
Appellant testified in the case and, while he admitted that he had at times failed to *648 obtain authorizations for cards, he denied ever knowing that any cards were stolen. He also testified that he had many customers who spent a lot of money and that he had a very good customer base. Other employees and even the systems manager admitted that appellant was one of the most popular bartenders and attracted “high rollers” who would spend $2,000 in a night and leave a $500-600 tip to the bartender. Evidence of appellant’s knowledge and intent was hardly overwhelming. We cannot say that the improperly admitted testimony did not contribute to the guilty verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); London v. State, 541 So.2d 119 (Fla. 4th DCA 1989).
Our reversal of the conviction and sentence renders moot the remaining issues on appeal.
Reversed and remanded for a new trial.
GUNTHER and POLEN, JJ., concur.