Ralph SEWARD, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 535, 1997.

Supreme Court of Delaware.

Submitted: Oct. 20, 1998.
Decided: Jan. 22, 1999.

Edward C. Gill, (argued), Georgetown, DE, for appellant.

John Williams, (argued), Deputy Attorney General, Dover, DE, for appellee.

Before WALSH, HOLLAND, and HARTNETT, Justices.

HARTNETT, Justice.

Appellant, Ralph Seward, appeals his convictions by a jury in the Superior Court of one count of delivery of a narcotic schedule II controlled substance as a principal, two counts of the same crime as an accomplice, and one count of conspiracy in the second degree. On December 18, 1997, he was sentenced to fifteen years mandatory imprisonment. The appeal is without merit.

Seward, in this direct appeal, raises several issues. He argues that the Superior Court erred by: (a) denying his motion for Judgment of Acquittal on three counts of delivery of cocaine because, without any chemical testing or expert testimony identifying the substance he possessed as cocaine, there was insufficient evidence to sustain his conviction; (b) failing to grant his motion to suppress evidence found on him when he was arrested after a police officer followed him into his residence without a warrant; (c) allowing the police officers to testify that the substance they saw was cocaine and allowing the State to argue that one of the police officers was an expert, after a pretrial ruling on discovery violations had precluded the officer from testifying as an expert witness; (d) failing to issue any sanctions against the State for discovery violations, after the State produced the medical examiner's report to the defense five days before trial; and (e) allowing his convictions for three counts of delivery of cocaine, instead of just one, in violation of the principles of duplicity and double jeopardy.

After reviewing the record, we find that the evidence is sufficient to support Seward's convictions for delivery of cocaine. We find that the Superior Court did not abuse its discretion in denying Seward's motion to suppress evidence seized when he was arrested and in admitting the medical examiner's report after allowing Seward the opportunity to request a continuance. We also find that Seward's conviction on three counts of delivery of cocaine does not violate the Constitutional bar against double jeopardy and even if the police officers expressed opinions in violation of the pretrial ruling, any error was harmless. We therefore affirm.

## I. Background

On August 6, 1996 through August 9, 1996, Dover Police Department Officer, Nicholas D. Berna, conducted surveillance of a house on South New Street in Dover. Officer Berna observed the area with binoculars from a vacant house across the street. During the first three days of surveillance, Officer Berna observed outside exchanges between Seward and Aaron Collins of small white rocks that appeared to him to be crack cocaine. He observed Seward giving Collins what appeared to be crack cocaine on four or five occasions, each day, for a total of fifteen or twenty times, and saw Collins, in exchange for money, give the substance to people who came up to him. Collins was then observed giving the money he received to Seward. Officer Berna also observed that when the substance was exchanged for money, the purchasers appeared to inspect the substance. At trial, Officer Berna testified that on the three days prior to August 9, Seward would run inside the house under surveillance whenever a police car appeared.

On August 9, 1996, Berna was working with two other Dover Police officers, Anthony DiGirolomo and Jack Fortney, who were in uniform and located a block away in a marked patrol car. Officer Berna observed Seward and Collins standing on the sidewalk outside of the house under surveillance when a female approached and handed money to Collins in exchange for a small white rock. Collins gave the money to Seward who placed it in his pants pocket. Officer Berna testified that as the female walked away, she was looking at the small white rock in her hand as if to inspect it. Approximately five or ten minutes later, Officer Berna observed Seward take a small white chunky substance, that looked like a small white pebble, out of his pocket and hand approximately four to six rocks each, to Collins and a male on a bicycle. The male then rode off on the bicycle and left the area. Collins placed the substance in his pocket.

Collins was then observed walking between two houses with a different male and female. Officer Berna testified that Seward stayed on the sidewalk and appeared to be acting as a lookout by looking up and down the street. During this time, Officer Berna observed Collins exchange for money with the male and the female what appeared to be crack cocaine. After the transaction, Collins was observed giving the money he received to Seward who put the cash in his right pants pocket.

Officer Berna then contacted Officer DiGirolomo by police radio and gave a description of the clothing worn by Seward and Collins and identified the two by name. Seward rode away on a bike before Officers DiGirolomo and Fortney arrived. Officer Berna advised the two officers that, as they were pulling up, Collins reached in his pocket and put something in his mouth. The two officers immediately exited the vehicle and advised Collins to open his mouth. After a brief struggle, four or five small white chunky pebbles or rocks came out of Collins' mouth. Collins was arrested and taken to the Dover Police station. The white chunky substance, retrieved from Collins mouth, was tested by a forensic chemist at the State Medical Examiner's office and determined to contain crack cocaine. Later, when Seward was arrested, the police found three $20.00 bills in his right pants pocket.

Seward did not testify at trial, but Collins appeared as a defense witness and admitted being in possession of cocaine on August 9, 1996, when he was arrested. He also admitted selling cocaine on South New Street in Dover on the three preceding days. Collins, however, denied that Seward gave him drugs on any of the days or had any connection

with the cocaine he possessed on August 9, 1996. Collins testified that he did give Seward twenty dollars on August 9, 1996, as a partial repayment of a prior twenty-five dollar loan from Seward to purchase a sound speaker.

## II. Sufficiency of the Evidence

██ Seward claims that because there was no chemical testing or expert testimony identifying any substance he possessed as cocaine, the evidence at trial was legally insufficient to establish beyond a reasonable doubt that the substance which formed the basis of the delivery charges was cocaine. He therefore claims that his motion for judgment of acquittal made at the end of the State's case as to the delivery of cocaine charges should have been granted.

██ We review the denial of a motion for judgment of acquittal *de novo* to determine "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt." [1] "This Court 'is not required to ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.' " [2]

From the facts adduced at trial, the jury could have concluded that Collins was making sales of substances that were inspected before money was given in exchange. The officer described the substances he saw being passed from Seward to Collins and from Collins to the purchasers. The officer's description of the substances matched the description of the substance found on Collins that was chemically tested and proven to be crack cocaine. The jury, in viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of delivery of cocaine beyond a reasonable doubt. The evidence, therefore, is sufficient to support Seward's convictions and we find that the trial court correctly denied Seward's motion for judgment of acquittal.[3]

## III. Chemical Testing of a Controlled Substance

██ Seward further argues that expert testimony from a chemist is necessary to strictly prove the identity of the substance he possessed because of the harsh penalties involved for violations of the controlled substances act.[4]

██ The well established rule in Delaware is that direct evidence is not necessary to establish guilt, because "guilt may be proven exclusively through circumstantial evidence since this Court does not distinguish between direct and circumstantial evidence in a conviction context." [5] Other jurisdictions have held that chemical testing is not necessary to support a conviction.[6] The court in *United*

1. *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355 (1991); *Monroe v. State*, Del.Supr., 652 A.2d 560, 563 (1995).

2. *Morales v. State*, Del.Supr., 696 A.2d 390, 393 (1997) (quoting *Skinner v. State*, Del.Supr., 575 A.2d 1108, 1121 (1990)).

3. *Morales*, 696 A.2d at 394.

4. *State v. Clemons*, Conn.Supr., 168 Conn. 395, 363 A.2d 33, 37 (1975) (footnote omitted) ("Proof of the exact nature of the substances upon which the prosecution is grounded, of course, is necessary, and the nature of the examinations essential for such proof with a high degree of scientific exactitude mandates the opinion of one competent to conduct such examinations.

As with any question of fact, the state must prove the narcotic or prohibited nature of the substance beyond a reasonable doubt. As with any factual question that requires evidence of experts, the defendant may produce expert testimony to rebut the opinion of the prosecution's witness...."), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975).

5. *Davis v. State*, Del.Supr., 706 A.2d 523, 525 (1998) (per curiam).

6. *United States v. Schrock*, 6th Cir., 855 F.2d 327, 334 (1988); *United States v. Murray*, 7th Cir., 753 F.2d 612, 615 (1985) ("The identity of a drug may be established by circumstantial evidence."); *United States v. Sanchez*, 11th Cir., 722 F.2d 1501, 1506 (1984) ("Although the identity of a narcotic must be established beyond a reasonable doubt, its nature may be established through circumstantial evidence."), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984); *United States v. Quesada*, 5th Cir., 512 F.2d 1043, 1045 (1975), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975); *United States v. Atkins*, 8th Cir., 473 F.2d 308, 313–14 (1973), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973); *United States v. Agueci*, 2nd Cir., 310 F.2d 817, 828 (1962) ("[T]he existence of and dealing with narcotics may be proved by

*States v. Schrock* rejected a similar argument for chemical testing stating:

> [i]llegal drugs will often be unavailable for scientific analysis because their nature is to be consumed. As a practical matter, therefore, the evidentiary rule urged by Schrock would insulate from prosecution a large class of unlawful acts involving illicit drugs when the government happens upon the scene too late to seize a sample of the substance. To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule. In view of the limitations that such a burden would place on prosecutors, and in accordance with general evidentiary principles, courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence. So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable.[7]

Seward is asking this Court to depart from the rule that guilt can be established from circumstantial evidence. We see no reason to depart from settled Delaware law that circumstantial evidence is sufficient to prove guilt and thereby carve out an exception in drug cases requiring expert testimony to establish whether the substance is in fact an illegal drug. Under our process the trier of fact takes into consideration all of the circumstances surrounding an alleged crime to determine if there is sufficient evidence to support the conviction.

## IV. Expert Testimony on a Controlled Substance

■ Next, Seward argues that even if chemical testing is not required, this Court should require some expert testimony on whether the substance he possessed was an illegal drug.[8] Seward contends that because of the State's discovery violations, no expert testimony of this nature was admissible in his trial. This Court has declined to require expert testimony to prove the elements of a crime when other credible evidence is available.[9] This is not a case, however, where no expert testimony was presented to establish that the drugs seized were in fact illegal substances. The Superior Court permitted the admission in evidence of the medical examiner's report, although it was not produced until five days before trial.[10] The drugs that tested positive as crack cocaine were the drugs found in the co-defendant Collins' mouth. There was testimony that Seward gave a small white chunky substance or pebbles to Collins, the co-defendant, shortly before Collins was arrested. There, therefore, was sufficient evidence identifying the substance Seward possessed as an illegal drug to uphold Seward's convictions.

## V. Motion to Suppress

■ Seward further argues that the Superior Court erred in failing to grant his motion at trial to suppress evidence found on him when he was arrested because the police lacked an arrest or search warrant and were not justified by exigent circumstances in following Seward into his residence. We review the denial of a motion to suppress, after an evidentiary hearing, for abuse of discretion.[11] The general rule is that a warrant is

circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished ground for inferring that the material in question was narcotics."), *cert. denied*, 372 U.S. 959, 83 S.Ct. 1013, 1016, 10 L.Ed.2d 11, 12 (1963); *Bernard v. United States*, D.C.Ct.App., 575 A.2d 1191, 1193 (1990).

7. *United States v. Schrock*, 6th Cir., 855 F.2d 327, 334 (1988) (citations omitted).

8. *Bernard v. United States*, 575 A.2d at 1195.

9. *Cline v. State*, Del.Supr., 720 A.2d 891 (1998) per curiam (finding that expert testimony was not necessary to prove all the elements of possession of a controlled substance with intent to deliver; that the intent to deliver could be proven by "expert testimony, an admission by the defendant, or some other credible evidence").

10. The effect of the delay is discussed at VI and VII.

11. *Liu v. State*, Del.Supr., 628 A.2d 1376, 1379 (1993); *Alston v. State*, Del.Supr., 554 A.2d 304,

required in order to enter a private residence to arrest a person in his home.[12] An exception to this rule exists when exigent circumstances are present.[13] The burden is on the State to establish that exigent circumstances existed to justify the police entry.[14]

■ The possibility that evidence may be destroyed has been recognized as an exigent circumstance.[15] The State met its burden by establishing that exigent circumstances existed when the police followed Seward into his residence and ordered him back outside to arrest him because of the reasonable possibility that evidence might be destroyed. When reviewing if the State met its burden, " 'the criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact.' "[16]

One factor in determining whether exigent circumstances existed, is when a person knows that the police are in pursuit and the evidence may be destroyed.[17] The officers observed that Seward for three days before the arrest, quickly entered the residence whenever a police car appeared. As the officers approached to arrest Seward, Officer DiGirolomo observed Seward "dart" into the residence when he saw the police car coming down the street and then come back out onto the porch and grab a child and rush back into the house. Officer DiGirolomo testified that after they observed Seward run inside, he advised Officer Fortney to go around to the back door in case Seward tried to escape out the back door. Therefore, based on all the circumstances, a factual basis existed from which the officers could have reasonably concluded that it was likely Seward would destroy the evidence.[18] The officers minimized their intrusion and took reasonable steps to secure Seward and prevent the destruction of evidence. The officers' actions demonstrated their reasonable belief that Seward would attempt to flee or destroy the evidence. The Superior Court, therefore, did not abuse its discretion in denying the motion to suppress.

## VI. Pretrial Ruling Excluding Police Officer as Expert Witness

Seward further contends that the trial court erred by allowing the State to violate a pretrial order excluding expert testimony. On May 15, 1997, five days before trial, during a calendar conference, the State produced, for the first time, a medical examiner's report stating that the substance taken from Collins was crack cocaine. During that conference, the State also stated that it intended to present expert testimony from Officer Berna regarding his knowledge of drugs. Because the request to qualify the officer as an expert was not timely under Superior Court Criminal Rule 16[19], the trial court ruled that Officer Berna would not be permitted to testify as an expert.

At trial, Officer Berna testified about his police background and both Officers Berna and DiGirolomo were permitted to testify that the substance they saw looked like crack cocaine.[20] The State argued in closing argu-

308 (1989), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2455, 104 L.Ed.2d 1009 (1989).

**12.** *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

**13.** *Mason v. State*, Del.Supr., 534 A.2d 242, 248 (1987) (citing *Patrick v. State*, Del.Supr., 227 A.2d 486, 489 (1967)).

**14.** *Id.*

**15.** *Gardner v. State*, Del.Supr., 567 A.2d 404, 410 (1989), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1785, 108 L.Ed.2d 786 (1990).

**16.** *Gardner*, 567 A.2d at 410 (quoting *Patrick v. State*, Del.Supr., 227 A.2d 486, 489 (1967)).

**17.** *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997).

**18.** *Mason v. State*, 534 A.2d at 250.

**19.** Seward filed his request for discovery on December 4, 1996. Under Superior Court Criminal Rule 16(d)(3)(B), the State was required to respond within 20 days of Seward's discovery request either complying or objecting to the request or specifying a reasonable alternative time, place, and manner of compliance not later than ten days before trial. It is undisputed that the State did not comply with this rule as to the expert testimony.

**20.** Officer DiGirolomo was never offered as an expert, his description of the substance was limited to one instance when he was asked to describe the substance that was seized from Collins and introduced at trial. He responded that it looked "like smashed up pieces of crack cocaine." Seward objected and after a brief side

ments that Officer Berna had seen crack cocaine before so he knew that the substance in question was crack cocaine. The trial court rejected Seward's request for a curative instruction on this issue.

This Court reviews evidentiary rulings for abuse of discretion.[21] If we determine that the Superior Court abused its discretion, the next inquiry is whether the error rises to the level of significant prejudice which acted to deny Seward a fair trial.[22] Although the Superior Court incorrectly allowed the officers to testify as to their opinions, there is no substantial prejudice which denied Seward a fair trial and the other properly admitted evidence, taken alone, is sufficient to support his convictions.

Under the Delaware Uniform Rules of Evidence (D.R.E.) 701, a lay witness may only express an opinion when the perception of the witness can not be communicated accurately and fully without expressing it in terms of an opinion and when the opinion does not require special knowledge, skill, experience or training.[23] An expert is permitted to give an opinion and is qualified by "knowledge, skill, experience, training or education."[24] During the trial, Officer Berna was permitted to testify that the substance passed between Seward and Collins looked like smashed up pieces of crack cocaine. The trial court overruled Seward's objection and found that a police officer could testify what cocaine looked like because it was in the common knowledge of a police officer and did

---

bar, the court instructed the State to limit the officer's description to characteristics such as color, texture, and size and not refer to the substance as cocaine or looking like cocaine. He then described the substance as "small, white in color, chunky texture." The court, however, never instructed the jury to disregard Officer DiGirolomo's opinion.

**21.** *Weber v. State*, Del.Supr., 547 A.2d 948, 955 (1988); *Laws v. Webb*, Del.Supr., 658 A.2d 1000, 1009 (1995).

**22.** *Barriocanal v. Gibbs*, Del.Supr., 697 A.2d 1169, 1171 (1997); *Nelson v. State*, Del.Supr., 628 A.2d 69, 77 (1993); *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 10 (1987); *Reynolds v. State*, Del.Supr., 424 A.2d 6, 7 (1980) (per curiam) (holding that opinion evidence erroneously omitted was harmless error when the admission amounted to a little more than surplusage); *Fisher v. State*, Del.Supr., 41 A. 184, 186 (1898) ("The case ... presents ... two questions: (1) Was the testimony objected to at the trial properly and legally admitted in evidence? and (2) if improperly and wrongfully admitted, was it such error as would justify this court in reversing the judgment of the court below?"); Super.Ct.Crim.R. 52(a) ("*Harmless error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

**23.** Delaware, in adopting D.R.E. 701, followed Rule 701 as adopted in Florida instead of F.R.E. or U.R.E. 701. It states:

If a witness is not testifying as an expert, his testimony about what he perceived may be in the form of inference and opinion, when:

(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or

opinions, and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and

(2) The opinions and inferences do not require a special knowledge, skill, experience or training.

D.R.E. 701. *See also Dick v. Koutoufaris*, Del.Super., C.A. No. 88C–No–114, Gebelein, J. (Nov. 19, 1990) Mem.Op. at 3, *aff'd*, Del.Supr., 604 A.2d 390 (1992); *United States v. Skeet*, 9th Cir., 665 F.2d 983, 985 (1982) ("Opinions of nonexperts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion.... If the jury can be put into a position of equal vantage with the witness for drawing the opinion, then the witness may not give an opinion."); *Floyd v. State*, Fla.Supr., 569 So.2d 1225, 1231–32 (1990) ("Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury[,] ... [however,] [l]ay witness opinion testimony is admissible if it is within the ken of an intelligent person with a degree of experience."), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *D.R.C. v. State*, Fla.Dist.Ct. App., 670 So.2d 1183 (1996) (finding it was error to allow officer to testify as a lay witness that based on his experience, the amount of cocaine seized, and lack of paraphernalia, that the juvenile had the intent to deliver after the officer failed to qualify as an expert witness on street level drug deals); *Mills v. State*, Fla.Dist.Ct.App., 367 So.2d 1068, 1069 (1979) ("A nonexpert witness may not express opinions or conclusions which the jury could draw from the facts to which he has testified ... particularly ... when the opinion or conclusion reaches an ultimate issue in the case."), *cert. denied*, Fla.Supr., 374 So.2d 101 (1979).

**24.** D.R.E. 702.

not rise to the level of expert testimony. Because, however, under the circumstances of this case, what the officers perceived could have been communicated accurately and fully by describing the substance, it was improper to allow the officers to express their opinion that the substance was crack cocaine.[25] At oral argument in this Court, the State conceded that the officer's testimony identifying the substance as crack cocaine was not within the common knowledge of a lay person and therefore the officer improperly testified as an expert.[26]

■ We must, therefore, determine if the trial court's error in permitting the officers to testify as to their opinion that the substance looked like crack cocaine rises to the level of significant prejudice and acted to deny Seward a fair trial.[27] We find that it does not. Officer Berna testified that what he saw passed between Collins and Seward, "looked like crack cocaine." Officer Berna then described the substance as "small white rocks, very small, like a pebble." Later, Officer Berna testified that he observed Collins hand a female an object that "appeared to be crack cocaine". Seward's attorney immediately objected, and the court overruled the objection and stated to the jury:

I want to make sure the jury understands that this evidence is not proved it was crack cocaine. It is simply the officer's testimony as to based on his experience what he thought it was. I think that has got to be made clear, and I think the ultimate decision as to what it was is up to the jury based on all the evidence you hear in this case, but I believe the police officer is entitled to testify as to what he thinks the substance is and the jury will make the determination.

Later, the court, sua sponte, instructed the jury to disregard Officer Berna's testimony referring to the substance as crack cocaine. The court instructed the jury "[t]hat is something to be proved as far as any substance goes by analysis by the medical examiner" and advised the State to instruct Officer Berna not to refer to the substance as crack cocaine but to describe what it looked like. Therefore, even if it was error for the court to have allowed Officer Berna to give his opinion of what the substance looked like, there was no substantial prejudice to Seward. Officer DiGirolomo's opinion that the substance looked like crack cocaine was limited to the substance seized from Collins that was identified by the medical examiner's office as cocaine and admitted as evidence at trial. Although it was improper for him to give his opinion that the substance looked like crack cocaine, his testimony clearly did not prejudice Seward. When that substance was placed before the jury to see, it had already been tested and found to be cocaine.

The Superior Court specifically stated that it was up to the jury to determine what the substance was. The jury was permitted to see what the substance looked liked that was taken from Collins and Collins admitted that he was in possession of crack cocaine when he was arrested and that he intended to sell it. Collins also testified that Seward had nothing to do with his selling the crack cocaine and admitted that he had given Seward money on August 9, but stated that it was in repayment for a loan. The jury was free to determine Collins' credibility and reject all or part of his testimony.[28] Even if the officers had not been permitted to testify about their opinion of what the substance was, Officer Berna described the substance he saw being passed from Seward to Collins and from Collins to the purchasers. That description

**25.** D.R.E. 701; *Murphy v. State*, Fla.Dist.Ct.App., 642 So.2d 646, 647 (1994).

**26.** Because we base our decision on D.R.E. 701(1), there is no need to decide whether identifying the substance as crack cocaine requires special knowledge, skill, experience or training under D.R.E. 701(2).

**27.** *Gordon v. State*, Del.Supr., No. 105, 1997, Veasey, C.J. (Dec. 23, 1997), Order at 2 ("An

error in admitting evidence is harmless only when the properly admitted evidence, taken alone, is sufficient to support a conviction."); *Barriocanal v. Gibbs*, 697 A.2d at 1171; *Nelson*, 628 A.2d at 77; *Van Arsdall*, 524 A.2d at 10; *Fisher v. State*, 41 A. at 186 (finding error harmless if it did not prejudice or work injury to the defendant's interests).

**28.** *Chao v. State*, Del.Supr., 604 A.2d 1351, 1363 (1992).

matched the description of the substance found on Collins. The substance found on Collins was chemically tested and proved to be crack cocaine. Even without the officers' opinions of what they believed the substance to be, the evidence is sufficient to support Seward's conviction.[29] Therefore, any error was harmless and Seward was not substantially prejudiced and denied a fair trial.[30]

### VII. Sanction for Discovery Violation

■ Seward also contends that the Superior Court erred in allowing the State to introduce at trial the medical examiner's report that was not produced until approximately five days before trial.[31] Seward filed a motion to dismiss based on the discovery violation. The Superior Court held that the delay in Seward receiving the report caused some prejudice, however, it concluded that it did not rise to a level requiring the exclusion of the evidence and denied the motion but allowed Seward the opportunity to request a continuance. The court noted "I think technically the State is probably not in violation of any Rule 16 discovery because the State did disclose that there was a medical examiner's report, and I think the defendant, if the

defendant was really interested in actually seeing that report, ha[d] some obligation to get it." Seward states that he did not request a continuance but asserts he suffered prejudice. He does not explain, however, what the prejudice was.

■ This Court reviews a trial court's decision whether to impose sanctions for violation of discovery rules for abuse of discretion.[32] "In determining the question of whether sanctions should be imposed, the trial court should weigh all relevant factors, such as the reasons for the State's delay and the extent of prejudice to the defendant."[33] When discovery violations occur, the trial court is vested with broad discretion in determining what sanctions are appropriate.[34] When deciding what sanctions are appropriate, "the court should balance the needs of society with the defendant's right to a fair trial."[35] Under the abuse of discretion standard, this Court may only reverse the Superior Court's decision if it is found to be clearly erroneous.[36]

■ As this Court noted in *Doran*, "Superior Court Criminal Rule 16 sets forth four alternative sanctions: 1) order prompt com-

**29.** *Gordon v. State*, No. 105, 1997 at 2; *Nelson*, 628 A.2d at 77; *Van Arsdall*, 524 A.2d at 10.

**30.** *Barriocanal v. Gibbs*, 697 A.2d at 1171; *Nelson*, 628 A.2d at 77; *Van Arsdall*, 524 A.2d at 10.

**31.** See footnote 19. At trial there was some dispute between the State and Seward on the proper procedure for responding to discovery requests. On January 3, 1997, Seward's attorney requested copies of any items set forth in item three of their discovery request. Item three covered "[b]ooks, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are in the possession, custody, or control of the State, and which are material to the preparation of the Defendant's defense or are intended for use by the State as evidence in chief at the trial or were obtained from or belonged to the Defendant." The State attempted to make arrangements to have Seward's attorney come to the Attorney General's office to view the case file or if he specifically identified items he wanted copied, they would have made and forwarded copies to him. Seward's attorney responded on January 10, 1997, again requesting the items be produced in his office. The State contended that they made their records available for Seward's attorney to review and offered to copy documents requested, however he never requested a copy of the medical

examiner's report. There was no response from the State until May 9, 1997 when they forwarded a copy of the medical examiner's report to Seward's attorney. Seward's attorney indicated that he did not receive the medical examiner's report until May 15, 1997 at a calendar conference. It is undisputed that in spite of the efforts of both parties, the medical examiner's report was not received by Seward's attorney until five days before trial. The trial court found that it was customary for the medical examiner's report not to be produced until shortly before trial, which was a bad practice, but that Seward's discovery requests and letters dealt mainly with the items listed in number three and did not refer to the medical examiner's report.

**32.** *Snowden v. State*, Del.Supr., 677 A.2d 33, 39 (1996).

**33.** *Id.*

**34.** *DeJesus v. State*, Del.Supr., 655 A.2d 1180, 1207 (1995).

**35.** *Id.*

**36.** *Gregory v. State*, Del.Supr., 616 A.2d 1198, 1200 (1992).

pliance with the discovery rule; 2) 'grant a continuance;' 3) 'prohibit the party from introducing in evidence material not disclosed;' or 4) such other order the Court 'deems just under the circumstances.' " [37] Seward argues that the Superior Court should have imposed at least some sanction against the State for its discovery violation such as excluding the report from evidence.[38] It is within the trial court's discretion to cure the violation, if possible, in lieu of excluding the evidence.[39] The Superior Court reviewed the circumstances and determined that the best recourse was to allow Seward to seek a continuance. Seward declined this opportunity on the basis of prejudice without any further explanation of what prejudice he was referring to. Under those circumstances, the Superior Court did not abuse its discretion.

## VIII. Conviction on Multiple Counts for Delivery of Cocaine

Seward lastly argues that he should have been convicted of only one count of delivery of cocaine because he only put one parcel of a substance into the stream of commerce and to convict him for three counts based on one act is in violation of the Constitutional ban on double jeopardy, the requirements of due process, and the principle of duplicity. This Court reviews Constitutional claims *de novo* to determine if the trial court committed an error of law.[40] We find that Seward is not being punished multiple times for one act, because he was convicted as a principal on one count and an accomplice on two counts, and each count of the indictment required proof of an additional fact that the other charge did not.

The Constitutional double jeopardy clause prohibits multiple punishments for the same offense.[41] The general test to determine whether separate counts of an indictment actually charge two offenses or only a single offense, is whether each count requires proof of a fact that the other does not.[42] The principle against multiplicity is based on the presumption that the legislature does not intend to punish the same offense under different statutes.[43] If it is clear, however, that the legislature intended to impose cumulative sentences, multiple punishments are not barred.[44] Seward argues that if his convictions are upheld, then a defendant will be permitted to be convicted more than once for the same conduct and under this theory "a person who puts the drugs into commerce may be convicted of an indefinite number of deliveries which are only limited by the amount of times that the drugs then change hands." [45]

Seward is incorrect. He was convicted on the first count as a principal based on his delivery of drugs to Collins. Seward's second and third convictions were based on him being an accomplice to Collins' delivery to the last witnessed transaction where a male and female each received a substance from Collins and each gave Collins money. According to the testimony, Seward stood on the street, kept watch, and appeared to be acting as a look out for the transactions. Therefore, each count required proof of an additional fact and each count involved a

---

**37.** *Doran v. State*, Del.Supr., 606 A.2d 743, 745 (1992) (quoting Super.Ct.Crim.R. 16(d)(2)).

**38.** *See Id.* (excluding defendant's statement that was not timely disclosed from State's case in chief but admissible for impeachment); *Johnson v. State*, Del.Supr., 550 A.2d 903 (1988) (finding defendant's statements that were not presented until after the defendant testified could not be used for impeachment).

**39.** *DeJesus v. State*, 655 A.2d at 1207.

**40.** *Abrams v. State*, Del.Supr., 689 A.2d 1185, 1187 (1997) (per curiam); *Grace v. State*, Del. Supr., 658 A.2d 1011, 1015 (1995).

**41.** *Stigars v. State*, Del.Supr., 674 A.2d 477, 481 (1996); *State v. Cook*, Del.Supr., 600 A.2d 352, 354 (1991).

**42.** *Forrest v. State*, Del.Supr., 721 A.2d 1271, 1278 (1999) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)); *State v. Cook*, 600 A.2d at 355 (citing *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

**43.** *Stigars v. State*, 674 A.2d at 481.

**44.** *Forrest v. State*, 721 A.2d at 1277–79; *Stigars v. State*, 674 A.2d at 481–83; *State v. Cook*, 600 A.2d at 355.

**45.** (Appellant's Opening Br. at 12.)

different recipient of cocaine. Seward was not punished for giving Collins the drugs and walking away, the evidence showed he actively participated in helping Collins facilitate the transactions by keeping a look out. Additionally his involvement as an accomplice was reenforced when Collins gave him the money after the transactions. Seward's arguments, therefore, are not persuasive.

### IX. Conclusion

The judgments of conviction of the Superior Court are therefore **AFFIRMED**.