Lakisha SHORT, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 182,2004.

Supreme Court of Delaware.

Submitted: Nov. 17, 2004.

Decided: Dec. 30, 2004.

James D. Nutter, Esquire, Assistant
Public Defender, Georgetown, Delaware,
for appellant.

Kim Ayvazian, Esquire, Department of
Justice, Georgetown, Delaware, for appel-
lee.

Before HOLLAND, BERGER and
JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Lakisha Short,
appeals from two final judgments entered
by the Superior Court. Following a jury
trial, Short was convicted for committing
the offenses of Robbery in the First De-
gree,[1] two counts of Possession of a Fire-
arm During Commission of a Felony[2] and
Aggravated Menacing.[3] The former and
the latter convictions are not being chal-
lenged.

1. Del.Code Ann. tit. 11, § 832 (2002).

2. Del.Code Ann. tit. 11, § 1447A (2002).

3. Del.Code Ann. tit. 11, § 602 (1974).

Short has raised one issue in this appeal. According to Short, the State presented no expert testimony that the object admitted into evidence as a "firearm" was capable of discharging a "shot, projectile or other object ... by force of combustion, explosive, gas and/or mechanical means ...."[4] Consequently, Short submits that the State failed to prove that the object was a firearm, as that term is defined by statute. Therefore, Short argues that the Superior Court erred when it denied the motions for judgments of acquittal on the two counts of Possession of a Firearm During the Commission of a Felony.

Short acknowledges that this Court has previously considered and rejected similar arguments.[5] We have concluded that Short's argument is also without merit. Therefore, the judgments of the Superior Court must be affirmed.

### *Facts*

Clorice Adams worked at King's Market outside of Lincoln. On August 20, 2003, an individual entered the store and asked for a cheese steak. After placing this order, the person walked out of the store and later reentered.

Adams' co-worker, Khalid Alsmadi, was behind the counter at the cash register when Adams heard the person yell, "Open the F–MF"er." From a distance of about six feet away, Adams saw the barrel of a gun and watched Khalid open the register. The robber grabbed some of the money inside the register and ran away.

Khalid was starting to ring up the cheese steak when the robber pulled out a gun and aimed it at him. He described it as a big gun with a long barrel, not a semi-automatic, but one of the "old ones." After the robber ran out of the store with the money, Khalid ran to the door. He observed the robber get into a medium-sized American car, gray in color, and drive away. Khalid saw only one person in the car.

Adams called 911 to report the robbery. When the police responded to the market, Khalid told them that the robber was a female who could easily be mistaken for a man. He had recognized her as a former customer. Officer Harry Litten of the Ellendale Police Department heard the description of the suspect and her vehicle over the radio. He recognized the descriptions as similar to Short and the car she drove.

Litten knew where Short lived outside of Ellendale. He drove past Short's residence and parked nearby to observe the traffic. He saw an unfamiliar brown Honda Accord pull out of a lane. Although Litten could see clearly a male operator, the passenger seat was in a reclined position. Litten could not see who the second person was in the vehicle. He followed the Honda as it drove toward Ellendale, but then he was called back to Short's residence.

Short's neighbor, Ruth Deshields, had been sitting outside in her front yard that afternoon. She saw Short drive upon the lane in her gray vehicle, followed by "Mr. Nathan" in a brown Honda Accord. Deshields saw Short get into the passenger side of the other car, and watched it drive away in the direction of Ellendale. Deshields described Short to the police as lying back in the car as though she did not want to be seen.

---

4.  Del.Code Ann. tit. 11, § 222(11) (1974).

5.  *Bryson v. State,* 840 A.2d 631 (Del.2003); *Desmond v. State,* 654 A.2d 821 (Del.1994); *Donophan v. State,* 424 A.2d 301 (Del.1980); *Jenkins v. State,* 401 A.2d 83, 87 (Del.1979).

The police responded to Short's residence and found a grey Chevrolet with the motor still warm parked next to a trailer. The vehicle was towed to Troop 4. After obtaining and executing a search warrant, the police discovered a tee-shirt on the floor of the front passenger seat, a green hat on the back seat, and a gun, wrapped in a light blue, thin material inside the trunk.

The police showed Khalid and Adams a photo-lineup containing Short's photograph. Each eyewitness identified Short's photograph as that of the robber. At trial, Khalid and Adams identified Short in the courtroom as the person who robbed King's Market.

### Motion For Acquittal

After the State rested its case, Short moved for judgments of acquittal on the two counts of Possession of a Firearm During the Commission of a Felony. Short argued that the State had failed to present any expert testimony to establish that the gun introduced into evidence met the statutory definition of a firearm. In opposition to the motion, the State argued that it did not need an expert witness to present this testimony because:

State's Exhibit No. 11 is clearly a revolver-type gun where you can physically see it. You don't need an expert witness to know, like the old cowboy movies, the bullets go in, you click back, you pull the trigger and something comes out this end. I[sic] does not take an expert witness or speculation to come up with that. It's not a complicated type of gun where the jury may wonder how does this thing work. I know every person has seen what these things do in the old cowboy movies. It is not rocket science. It does not have to be an oper-

able gun in order for it to meet the definition of a firearm under the statute. The trial judge denied the motion, agreeing with the State that "we [do not] need an expert to come in here and tell us that is a firearm when to me it so obviously is."

### Acquittal Properly Denied

The denial of a motion for a judgment of acquittal is reviewed *de novo* on appeal to determine "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[6] Short argues that the State failed to present any expert testimony to establish that the object admitted into evidence as a "firearm" comported with the statutory definition of that term:

(11) "Firearm" includes any weapon from which a shot, projectile or other object may be discharged by force of combustion, explosive, gas and/or mechanical means, whether operable or inoperable, loaded or unloaded. It does not include a BB gun.[7]

According to Short, the physical object itself is not enough to establish *prima facie* that the item is a firearm. Short submits that there must be expert testimony about how the firearm worked and what type of projectile could be loaded into it. The State submits that expert testimony was unnecessary and that it presented other substantial evidence from which a rational jury could have concluded beyond a reasonable doubt that the object in question was, in fact, a firearm as defined by the statute.

Two eyewitnesses testified that they saw Short with a gun. One eyewitness, Clorice Adams, described the gun as having a long, narrow, black barrel. The other eyewitness, Khalid Alsmadi, described the gun

---

**6.** *Seward v. State,* 723 A.2d 365, 369 (Del. 1999) (citations omitted).

**7.** Del.Code Ann. tit. 11, § 222(11) (1974).

as big, "one of them old ones." He described the barrel as "long a little bit, but I am not talking about a real rifle." Each eyewitness was shown State's Exhibit A for identification, later admitted as State's Exhibit No. 11. Each one testified that the weapon was the same gun he or she had seen during the robbery.

When the prosecutor showed the weapon to the first eyewitness, the prosecutor stated: "Clorice, there is a gun lock put on by the [Superior] Court so it can't fire. There is another safety that the State Police put on this. Does this look familiar to you?" Similarly, when the prosecutor showed the weapon to the second eyewitness, the prosecutor stated: "It has a gun lock added down here and then white plastic and it is not loaded, so it won't go off in here. Does this look familiar to you?" The State then introduced the gun into evidence without any objection from the defense.

■ Contrary to Short's argument, an expert witness was not necessary to explain to the jury how the gun worked.[8] Expert testimony is only necessary if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue ...."[9] The record supports the Superior Court's ruling that the handgun, physically present in the courtroom with added safety devices, was "obviously" a "firearm," as that term is defined by statute.[10]

The evidence in this case included consistent testimony from two eyewitnesses describing and identifying the gun they had observed during the robbery.[11] The gun itself was introduced into evidence, unloaded with visible locks affixed by the Superior Court and State Police so that it would not be a danger to anyone. A rational jury, viewing this evidence in the light most favorable to the State, could have found beyond a reasonable doubt that Short was in possession of a "firearm" during the commission of the robbery.[12]

### Conclusion

The trial judge properly denied Short's motions for judgments of acquittal on two counts of Possession of a Firearm During the Commission of a Felony. The judgments of the Superior Court are affirmed.

**8.** *Bryson v. State,* 840 A.2d 631 (Del.2003); *Desmond v. State,* 654 A.2d 821 (Del.1994); *Donophan v. State,* 424 A.2d 301 (Del.1980); *Jenkins v. State,* 401 A.2d 83, 87 (Del.1979).

**9.** D.R.E. 702 (2004).

**10.** Del.Code Ann. tit. 11, § 222(11) (1974).

**11.** *See Fortt v. State,* 767 A.2d 799, 802–03 (Del.2001) (where the victim alone testified that the weapon used during the robbery was a real gun, this Court held that was sufficient evidence for a rational trier of fact to find the defendant guilty of Possession of a Firearm During the Commission of a Felony).

