IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTOINE L. MILLER, | § | |
| | § | No. 654, 2015 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1411011958 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: December 7, 2016
Decided: January 3, 2017
Revised: January 31, 2017

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

## <u>ORDER</u>

This 31st day of January, 2017, having considered the briefs and the record below, it appears to the Court that:

(1) Antoine Miller appeals his convictions for conspiracy to commit racketeering, aggravated possession of heroin, and other offenses related to his role in a Delaware heroin trafficking ring. Miller raises seven issues in this appeal. Three of those issues—that the jury instruction given by the Superior Court did not adequately define "enterprise" according to the Delaware RICO statute, that the State presented insufficient evidence of an association-in-fact enterprise, and that the State improperly vouched for and bolstered certain witnesses' testimony by

asking about their plea agreements—are the same issues decided in co-defendant Andrew Lloyd's appeal, and we affirm those issues for the reasons stated in that opinion.[1]

(2)     Turning to the four remaining issues on appeal, Miller first argues that the warrant application for the search of his residence was not supported by probable cause, and thus the Superior Court abused its discretion by refusing to suppress the drugs found in his home.  Second, he argues that the Superior Court should have granted a *Flowers*[2] hearing because certain statements from a confidential informant in the probable cause affidavit were incorrect.  Third, he argues that the Superior Court should have acquitted him because the State did not offer expert testimony on the weight or chemical composition of the drugs found in his home.  Finally, Miller argues that his sentence was excessive.

(3)     We have concluded that Miller's arguments are without merit.  Even excluding from the affidavit the allegedly false information from the informant, the affidavit establishes probable cause to support the search warrant for Miller's home.  Further, Miller has not established the need for a *Flowers* hearing because the additional information from the informant would not have materially aided his defense.  The court also correctly denied his motion for judgment of acquittal because the State presented ample circumstantial evidence that Miller possessed at

---

[1] *See Lloyd v. State*, __ A.3d __, 2016 WL 7383768 (Del. Dec. 20, 2016).
[2] *State v. Flowers*, 316 A.2d 564 (Del. Super. 1973).

2

least five grams of heroin. Finally, Miller's sentence was within the statutory guidelines and was not excessive. Therefore, we affirm the judgment of the Superior Court.

(4) A multi-agency investigation into a Delaware heroin dealing ring began in October 2014. Law enforcement developed as suspects Antoine Miller, Andrew Lloyd, and approximately forty other individuals. On October 28, 2014, after a lengthy investigation, Wilmington Police Detective Joseph Leary and Delaware State Police Officer Michael Terranova submitted a ninety-nine paragraph affidavit of probable cause requesting search warrants for ten different residences. One of the residences was Miller's home where he lived with his girlfriend, Felicia Pagan.

(5) The affidavit contained the following facts:

- Pagan and Miller lived together at 810 West 9th Street, Wilmington Delaware.
- Pagan owned a maroon 2006 Dodge Caravan which Lloyd used to deliver heroin. Police corroborated this information through surveillance and wiretaps.
- Police had information from a past proven reliable confidential informant that one of Lloyd's associates drove the van to make heroin deliveries in July and again in September 2014.
- In October 2014, Detective Leary saw the van parked nearby during a controlled delivery with Lloyd.
- The confidential informant said that Pagan and Lloyd's girlfriend used to lived together in Claymont and that they would store large quantities of heroin in their home.
- The informant took Lloyd to Miller's house to pick up the van. Others referred to the van as "Lloyd's van."

3

- Before October 1, 2014, the van was owned by Yvonne Johnson until it was sold by the Philadelphia "supply source" for use by the drug trafficking organization's members.
- Pagan had spoken with Lloyd about a threat of retaliation from a woman known as "Ratchet" who Miller had "suspected violent encounters involving firearms [with in] the past."[3]
- Lloyd would use his associates' homes as "stash houses" to hide heroin.

The Justice of the Peace Court granted the warrant on October 28, 2014.

(6)    On October 30, 2014, police executed the warrant at Miller's and Pagan's home.  Police found 1,428 bags of heroin and thousands of dollars in cash in the closet of their master bedroom.  Police also saw someone throw a gun on the roof of a neighboring residence which they later recovered.

(7)    A New Castle County grand jury indicted Miller for various offenses including criminal racketeering, conspiracy to commit criminal racketeering, aggravated possession of heroin, and multiple weapons offenses.  On July 27, 2015, Miller moved to suppress the gun and the heroin, arguing that the affidavit submitted by police did not provide probable cause to issue the warrant.  Specifically, Miller argued that certain allegations in the affidavit were false.  He also challenged the nexus between the criminal activity described in the affidavit and the place to be searched.   Miller also filed a *Flowers* motion, requesting that the Superior Court conduct an *in camera* examination of the confidential informant.

---

[3] App. to Opening Br. at 136.

4

(8) On September 18, 2015, the Superior Court held a hearing on the motions. After hearing testimony from several witnesses, the court ruled that there was no basis to suppress the gun even if the warrant was flawed because an officer saw Miller throw the gun onto the roof of an adjacent home, creating an independent basis of probable cause. The court reserved judgment on the motion to suppress the heroin and the *Flowers* motion. On October 7, 2015, the Superior Court denied the motions and stated that it intended to file a written opinion, which never occurred.

(9) A joint trial for co-defendants Miller and Lloyd commenced on October 20, 2015, and continued for eight days. Before the court instructed the jury, Miller moved for a judgment of acquittal claiming that the State failed to present expert testimony on the weight or chemical composition of the substance police retrieved from Miller's home. The court denied the motion prior to sentencing, finding that there was sufficient circumstantial evidence to find that the substance was heroin.

(10) On October 30, 2015, the jury found Miller guilty of conspiracy to commit racketeering, aggravated possession of heroin, two counts of second degree conspiracy, and possession of drug paraphernalia, and acquitted him of the remaining offenses. The Superior Court sentenced Miller to a total of twenty years

at Level V incarceration followed by decreasing levels of supervision. This appeal followed.

(11)  Miller first argues that the Superior Court erred by denying his motion to suppress. Specifically, he argues that certain facts in the affidavit were not true, and that without those facts, there was an insufficient showing of probable cause to issue a warrant. He also argues that there was an insufficient nexus between the criminal activity alleged in the affidavit and Miller's home. We review for an abuse of discretion the denial of a motion to suppress after an evidentiary hearing challenging the sufficiency of a search warrant.[4]

(12)  "Under the United States and the Delaware Constitutions, a search warrant may be issued only upon a showing of probable cause."[5] To determine whether probable cause exists, Delaware courts analyze, based on the totality of the circumstances, whether an affidavit in support of a search warrant sets forth facts within the four corners of the affidavit "adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[6] As we have previously explained:

> [T]his test requires the court to examine factors such as the reliability of the informant, the details contained in the informant's tip and the degree to which the tip is corroborated by independent police surveillance and information. If an informant's tip is sufficiently

---

[4] *Rybicki v. State*, 119 A.3d 663, 668 (Del. 2015).
[5] *Bradley v. State*, 51 A.3d 423, 431 (Del. 2012) (internal citation omitted).
[6] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

corroborated by independent police work, the tip may form the basis for probable cause even though nothing is known about the informant's credibility.[7]

(13)  In *Franks v. Delaware*, the United States Supreme Court held that a defendant is entitled to a hearing when he has made a "substantial preliminary showing" that the police knowingly or "with reckless disregard for the truth" relied on a false statement to establish probable cause.[8]  "[U]nder *Franks*, the allegedly false statements or omitted information must be necessary to a finding of probable cause before suppression is proper."[9]

(14)  At the hearing on the motion to suppress, Miller established that the maroon van that the informant said he saw on multiple occasions was in fact impounded at the Philadelphia Parking Authority from August 21 until it was sold to Pagan on September 23.  Thus, the allegations in the affidavit that the informant saw someone making deliveries in a maroon van in July and early September were not true.  The van was also not sold to Pagan by the "supply source," but by the Philadelphia Parking Authority.  Miller also established that Pagan had not lived with Lloyd's girlfriend in Claymont, but had lived with her in Edgemoor approximately ten years earlier.

---

[7] *LeGrande v. State*, 947 A.2d 1103, 1107-08 (Del. 2008).
[8] *Sisson v. State*, 903 A.2d at 300; *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).
[9] *Restrepo-Duque v. State*, 130 A.3d 340 (Del. 2015), *cert. denied*, 136 S. Ct. 2413 (2016).

(15) The State argues that when inaccurate information is included in a probable cause affidavit, the reviewing court can evaluate the contents of the affidavit without the inaccurate information to determine whether the affidavit establishes probable cause. If the informant's inaccurate information is removed from the affidavit, the State contends that probable cause still existed to support the search warrant for Miller's home.[10] We agree.

(16) Detective Leary stated in the affidavit that he, Detective Lloyd, and the informant saw Lloyd use Pagan's van to transport heroin, and that others referred to it as Lloyd's van. Detective Leary stated that he saw the van in October 2014 during a controlled heroin delivery involving Lloyd, and that an informant took Lloyd and an associate to Pagan and Miller's home to pick up the van. The affidavit also explained how Lloyd would hide drugs in various associates' homes, and that "the sheer volume of illegal substances [Lloyd dealt,] coupled with [] Lloyd's verified activity of relocating 'stash houses' demonstrates the likelihood that illegal substances [were] stored in numerous 'stash houses.'"[11] For instance,

---

[10] *See United States v. Nora*, 765 F.3d 1049, 1058 (9th Cir. 2014) (internal citation omitted) ("A search warrant isn't rendered invalid merely because some of the evidence included in the affidavit is tainted. The warrant remains valid if, after excising the tainted evidence, the affidavit's remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant."); *State v. Goecks*, 333 P.3d 1227, 1235 (Or. Ct. App. 2014) (emphasis omitted) (The judge must evaluate "whether the defendant has proven by a preponderance of the evidence that the evidence upon which the magistrate relied was inaccurate. If the defendant proves inaccuracies, the judge must then assess the sufficiency of the affidavit on the basis of the remaining accurate facts in the affidavit.").
[11] App. to Opening Br. at 193.

the affidavit stated that when police searched one of those houses under a warrant, they found 1,942 bags of heroin. Read as a whole, and without the offending parts, we find that the affidavit contained sufficient information for a magistrate to find probable cause that Pagan and Miller were associated with Lloyd's heroin distribution organization, and that their residence would likely contain contraband related to that enterprise.

(17)  Miller makes a related argument that because the informant supplied inaccurate information to the police, the Superior Court abused its discretion by denying his *Flowers* motion. This Court reviews the denial of a *Flowers* motion for abuse of discretion.[12] Under *State v. Flowers*[13] and Delaware Rule of Evidence 509(a), the State has a privilege to refuse to disclose the identity of a confidential informant. An exception to the privilege exists if the defendant can "show, beyond mere speculation, that the confidential informant may be able to give testimony that would materially aid the defense."[14] If the defendant meets this burden, he is entitled to a hearing on the matter.[15]

---

[12] *Cooper v. State*, 32 A.3d 988, 2011 WL 6039613, at *8 (Del. Dec. 5, 2011) (Table) ("We review the Superior Court's evidentiary rulings, including the denial of a motion to disclose an informant's identity, for abuse of discretion.").

[13] 316 A.2d 564 (Del. Super. 1973).

[14] *Cooper*, 2011 WL 6039613 at *9 (internal citation omitted).

[15] *See McNair v. State*, 947 A.2d 1122, 2008 WL 199831, at *1-2 (Del. Jan. 23, 2008) (Table).

(18) Miller sought *in camera* review of the confidential informant referenced in the affidavit to "test[] the CI on the falsehoods revealed by Miller."[16] Although Miller did establish that certain statements were inaccurate, we agree with the Superior Court that Miller did not show how additional questioning of the informant would materially aid his defense. Thus, the Superior Court did not abuse its discretion by declining to grant a *Flowers* hearing.

(19) Miller next argues that the Superior Court should have acquitted him on the charge of aggravated possession of heroin because the State failed to produce expert testimony about the content or weight of the drugs found in his home. We review the denial of a motion for judgment of acquittal to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[17] To convict Miller of aggravated possession of heroin, the State had to prove that Miller knowingly possessed five grams or more of heroin.[18] Chemical testing is not necessary to support a conviction.[19] "The well established rule in Delaware is that direct evidence is not necessary to establish guilt, because 'guilt may be

---

[16] Opening Br. at 42.
[17] *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991).
[18] *See* 10 *Del. C.* § 4752; *Wright v. State*, 126 A.3d 1109, 2015 WL 6150933, at *2 (Del. Oct. 19, 2015) (Table).
[19] *Seward v. State*, 723 A.2d 365, 370 (Del. 1999).

proven exclusively through circumstantial evidence since this Court does not distinguish between direct and circumstantial evidence in a conviction context.'"[20]

(20) The State produced sufficient evidence to prove that the substance in Miller's closet was heroin. Police found 1,428 bags of a white powdery substance packaged in bundles of thirteen in Miller's closet. Each bag was stamped "El Che." Lloyd packaged his heroin in bundles of thirteen and labeled the bags "El Che." In the closet where they found the heroin, police found a large amount of cash. A witness testified that she did not receive any complaints that the product she sold was fake heroin. Detective Lloyd testified that based on the forensic chemist's calculation of the drugs, fifty bundles of heroin (650 bags) would weigh 7.5 grams—police found 1,428 bags in Miller's closet. Therefore, a rational trier of fact could find that Miller possessed more than five grams of heroin.

(21) Finally, Miller argues that his "minimal acts" do not justify a sentence of twenty years for conspiracy to commit racketeering and aggravated possession. This Court will not ordinarily find that a sentencing judge abused his discretion if the sentence is within the statutory limits prescribed by the legislature.[21] "To disturb a sentence on appeal, the defendant must show either that it was an illegal sentence or that it was based on factual predicates which are false, impermissible,

---

[20] *Id.* at 369 (quoting *Davis v. State*, 706 A.2d 523, 525 (Del. 1998) (per curiam)).
[21] *Doughty v. State*, 147 A.3d 1134, 2016 WL 4938878, at *2 (Del. Sept. 14, 2016) (Table).

or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[22] Miller does not argue that the Superior Court relied on impermissible or false information or that his sentence exceeds the statutory guidelines. Thus, this Court has no basis to revisit his sentence.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[22] *Lewis v. State*, 144 A.3d 1109, 1118 (Del. 2016) (internal citation omitted).